WK:KTF
F. #2016R01805

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -                         Docket No. <u>17 CR 342 (S-3) (JS)</u>

JEFFREY CHARTIER and
LAWRENCE ISEN,

                Defendants.

– – – – – – – – – – – – – – – – –X


## THE GOVERNMENT'S REQUESTS TO CHARGE


                                          RICHARD P. DONOGHUE
                                          UNITED STATES ATTORNEY
                                          Eastern District of New York
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201

Whitman G.S. Knapp
Kaitlin T. Farrell
Assistant U.S. Attorneys
     (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully requests that the Court include the attached instructions in its charge to the jury and requests leave to offer additional instructions as may become appropriate during the trial.

REQUEST NO. 1
General Requests

The government respectfully requests that the Court charge the jury in its usual manner on the following subjects:

a.    The function of the Court and the jury;

b.    Equality of the parties before the Court;

c.    Jury communications with lawyers and the Court;

d.    Presumption of innocence;

e.    Burden of proof and reasonable doubt;

f.    Definitions of knowingly, willfully and intentionally;

g.    Function of the Indictment and what is not evidence;

h.    Permissible inferences from evidence;

i.    Direct and circumstantial evidence;

j.    Dates approximate and use of conjunctive in the Indictment;

k.    Stipulations;

l.    Objections;

m.    Credibility of witnesses;

n.    Expert witnesses;

o.    Particular investigative techniques not required;

p.    Uncalled witnesses equally available;

q.    Questioning wisdom of law or basing verdict on sympathy or prejudice prohibited;

r.    Considerations of punishment not the province of the jury;

s.    Multiple counts;

t.      Verdict must be unanimous; and

u.      Law enforcement witnesses.

<u>REQUEST NO. 2</u>
<u>The Indictment</u>

The defendants JEFFREY CHARTIER and LAWRENCE ISEN are formally

charged in an Indictment.  As I instructed you at the beginning of this case, an Indictment is a

charge or accusation.  You must, as a matter of law, consider each count of the Indictment

separately, consider each defendant separately, and you must return a separate verdict for each

count as to each defendant.

The Indictment in this case contains a total of seventeen counts.  The defendants

JEFFREY CHARTIER and LAWRENCE ISEN are charged in Count One with conspiracy to

commit securities fraud; in Count Two with conspiracy to commit wire fraud; and in Count Eight

with conspiracy to commit money laundering.   The defendant JEFFREY CHARTIER is charged

in Counts Three through Five with substantive securities fraud; in Counts Nine through Eleven

with money laundering; and in Count Sixteen with attempted obstruction of an official

proceeding.  The defendant LAWRENCE ISEN is charged in Counts Six and Seven with

substantive securities fraud; and in Counts Twelve through Fifteen with money laundering.

I remind you that you must consider each count of the Indictment separately,

consider each defendant separately, and you must return a separate verdict on each count in

which each defendant is charged.  Whether you find a defendant guilty or not guilty as to one

offense should not affect your verdict as to any other offense charged or defendant charged.

<u>Authority</u>

Adapted from the charges of the Hon. Eric N. Vitaliano in <u>United</u>
<u>States v. Discala</u>, 14 CR 399; Hon. Nina Gershon in <u>United States</u>
<u>v. Drivas</u>, E.D.N.Y., 10 CR 771; and Modern Federal Jury
Instructions ("Sand"), Instr. 3-8.

REQUEST NO. 3
COUNTS THREE THROUGH SEVEN: Securities Fraud

I am going to begin by instructing you on the substantive securities fraud charges.

A.   Counts Three through Seven

Counts Three and Four of the Indictment charge the defendant JEFFREY CHARTIER with securities fraud in relation to CES Synergies, with ticker symbol CESX, as follows:

Count Three:

In or about and between January 2014 and May 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEFFREY CHARTIER, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in CESX, in connection with the purchase and sale of investments in CESX, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

Count Four:

In or about and between June 2015 and October 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEFFREY CHARTIER, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements

5

made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in CESX, in connection with the purchase and sale of investments in CESX, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

Count Five of the Indictment charges the defendant JEFFREY CHARTIER with securities fraud in relation to National Waste Management Holdings, Inc., with ticker symbol NWMH, as follows:

In or about and between December 2014 and February 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEFFREY CHARTIER, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in NWMH, in connection with the purchase and sale of investments in NWMH, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

Count Six of the Indictment charges the defendant LAWRENCE ISEN with securities fraud in relation to Hydrocarb, Inc. with ticker symbol HECC, as follows:

In or about and between August 2014 and January 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LAWRENCE ISEN, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or

6

more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in HECC, in connection with the purchase and sale of investments in HECC, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

Count Seven of the Indictment charges the defendant LAWRENCE ISEN with securities fraud in relation to Intelligent Content Enterprises, Inc. with ticker symbol ICEIF, as follows:

In or about and between February 2016 and July 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LAWRENCE ISEN, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in ICEIF, in connection with the purchase and sale of investments in ICEIF, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

B.      The Statute and the Rule

The relevant statute is Section 10(b) of the Securities Exchange Act of 1934. That law provides in relevant part that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange –

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device

7

or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ("SEC")] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Based on its authority under this statute, the SEC enacted Rule 10b-5, which provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

C.      Definition and Elements

To prove the substantive crime of securities fraud charged in Counts Three through Seven, the government must establish each of the following elements beyond a reasonable doubt as to each respective defendant and count:

First, that in connection with the purchase or sale of a security, the defendant did one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of any security.

<u>Second</u>, that the defendant acted willfully, knowingly and with the intent to defraud.

<u>Third</u>, that the defendant knowingly used, or caused to be used, any means or instrumentalities of transportation or communication in interstate commerce in furtherance of the fraudulent conduct.

<u>First Element – Fraudulent Act</u>

The first element that the government must prove beyond a reasonable doubt is that, in connection with the purchase or sale of a security, the defendant in question did one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of any security.

The security at issue in Counts Three and Four is a security in CES Synergies, or CESX.  The security at issue in Count Five is a security in National Waste Management Holdings, Inc., or NWMH.  The security at issue in Count Six is a security in Hydrocarb Energy Corporation, or HECC.  The security at issue in Count Seven is a security in Intelligent Content Enterprises, Inc., or ICEIF.

9

To prove this element, it is not necessary for the government to establish all three types of unlawful conduct in connection with the sale or purchase of a security.  Any one will be sufficient for a conviction, if you so find, but you must be unanimous as to which type of unlawful conduct you find to have been proven beyond a reasonable doubt.

Let me now explain some of these terms.

Device, Scheme, or Artifice to Defraud:  A device, scheme, or artifice to defraud is a plan for the accomplishment of a fraud. Fraud is a general term which embraces all efforts and means that individuals devise to take advantage of others.  The law that the defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts.  Among these manipulative and deceptive acts is orchestrated or manipulated trading in securities. This includes techniques, such as wash trades or match trades, that are intended to mislead investors by artificially affecting market activity.  Wash trades are prearranged purchases and sales of securities that match each other in price, volume and time of execution, and involve no change in beneficial ownership.  Match trades are similar to wash trades but involve a related person or party who places one side of the trade.  The law the defendant is alleged to have violated generally prohibits practices such as wash sales, matched orders or rigged prices that are intended to mislead investors by artificially affecting market activity.  The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in this case.

False Statements and Omissions:  A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was made with the intention to deceive.  False or fraudulent statements under the statute may include the concealment of material facts in a manner that makes what is said or represented deliberately misleading.

The deception need not be based upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.

"In Connection With": You need not find that the defendant actually participated in any securities transaction if he was engaged

in fraudulent conduct that was "in connection with" a purchase or sale of securities.  The "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

It is no defense to an overall scheme to defraud that the defendant may not have been involved in the scheme from its inception or may have played only a minor role with no contact with the investors and purchasers of the securities in question.  Nor is it necessary for you to find that the defendant was the actual seller or offeror of the securities.  It is sufficient if the defendant participated in the scheme or fraudulent conduct that involved the purchase or sale of securities.  By the same token, the government need not prove that the defendant personally made the misrepresentation or that he omitted the material fact.  It is sufficient if the government establishes that the defendant caused the statement to be made or the fact to be omitted.  With regard to the alleged misrepresentations and omissions, you must determine whether the statement was true or false when it was made, and, in the case of alleged omissions, whether the omission was misleading.

<u>Material Fact</u>: If you find that the government has established beyond a reasonable doubt that a statement was false or omitted in connection with the purchase or sale of any securities, you must next determine whether the fact misstated or omitted was material under the circumstances.  "A misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b–5 where there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision."  If you find that there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was successful or not, or that the defendant profited or received any benefits as a result of the alleged scheme.  Success is not an element of the crime charged.

With respect to each defendant and each respective count, if you find that the

government has not proven this element beyond a reasonable doubt, you must find the defendant

not guilty.  On the other hand, if you do find that the government has proven that a fraudulent act was committed by the defendant, beyond a reasonable doubt, then you must consider the second element as to the defendant.  You need not find that the government has proven each of the alleged fraudulent acts, but I remind you that you must reach a unanimous decision as to at least one fraudulent act.

Second Element – Knowledge, Intent and Willfulness

The second element that the government must establish beyond a reasonable doubt is that a defendant participated in the scheme to defraud knowingly, willfully and with intent to defraud.  These terms have the same meanings that I previously provided to you, and I will explain aiding and abetting to you later in my instructions.

Third Element – Instrumentality of Interstate Commerce

The third and final element of securities fraud is the use of the mails or any means or instrumentalities of transportation or communication in interstate commerce in furtherance of the scheme to defraud.  This would include the use of a telephone, a bank wire transfer or an email sent over the internet that traveled across state lines.

It is not necessary that the defendant be directly or personally involved in any mailing, wire or use of an instrumentality of interstate commerce.  If the defendant was an active participant in the scheme and took steps or engaged in conduct which he knew or reasonably could foresee would naturally and probably result in the use of interstate means of communication, then you may find that he caused an instrumentality of interstate commerce to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use reasonably can be foreseen, even though not actually intended, then one causes such means to be used.

It is not necessary that the items sent through interstate means of communication contain the fraudulent material, or anything criminal or objectionable.  The interstate means of communication may be entirely innocent.

The use of interstate communications need not be central to the execution of the scheme, and may even be incidental to it.  All that is required is that the use of interstate communications bear some relation to the object of the scheme or fraudulent conduct.

In fact, the actual offer or sale need not be accompanied or accomplished by interstate communications, so long as the defendant is still engaged in actions that are a part of a fraudulent scheme.

Each specific use of interstate communications in furtherance of the scheme to defraud constitutes a separate and distinct criminal offense.

In sum, in order to prove each respective defendant guilty of Counts Three through Seven, the government must prove, beyond a reasonable doubt: (1) that in connection with the purchase or sale of a security, the defendant committed a fraudulent act; (2) that the defendant acted knowingly, willingly and with the intent to defraud; and (3) that the defendant used the mails or any means or instrumentalities of interstate commerce in furtherance of the scheme to defraud.

D.    Securities Fraud Venue

I have explained to you the elements the government must prove beyond a reasonable doubt as to the securities fraud charged in Counts Three through Seven.  The

government must also prove venue for each count.  Unlike the elements I just explained to you that the government must prove beyond a reasonable doubt, the government must prove venue by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence, both direct and circumstantial. It refers to the quality and persuasiveness of the evidence, not to the quantity of evidence.

To establish venue for securities fraud as charged in Counts Three through Seven, the government must prove that it is more likely than not that: (1) the defendant intentionally and knowingly caused an act or transaction constituting a securities fraud to occur, at least in part, in the Eastern District of New York, which consists of the Counties of Nassau and Suffolk (Long Island), Kings (also known as Brooklyn), Queens and Richmond (also known as Staten Island); or (2) it was foreseeable that such an act or transaction would occur in the Eastern District of New York, and it did.  The government need not prove that the defendant personally was present in the Eastern District of New York.  It is sufficient to satisfy the venue requirement if the defendant in question intentionally and knowingly caused an act or transaction constituting a securities fraud to occur, at least in part, within the Eastern District of New York.

The government also must prove that the act or transaction was a part of the actual crime of securities fraud and not merely a step taken in preparation for the commission of the crime.

Therefore, if you find that it is more likely than not that an act or transaction in furtherance of the securities fraud charged in Counts Three through Seven took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Counts Three through Seven.

14

Again, I caution you that the preponderance of the evidence standard applies only to venue.  The government must prove each of the elements of securities fraud beyond a reasonable doubt for each count.

*   *   *

In sum, to find the defendant JEFFREY CHARTIER guilty of securities fraud as charged in Counts Three through Five, and to find the defendant LAWRENCE ISEN guilty of securities fraud as charged in Counts Six and Seven, you must find that the government has proven as to the respective defendant, beyond a reasonable doubt, each element of securities fraud as to the respective count, and that the government has also established venue by a preponderance of the evidence.

<u>Authority</u>

Adapted from the charges of the Hon. Eric N. Vitaliano in <u>United States v. Discala</u>, E.D.N.Y., 14 CR 399; Hon. Kiyo A. Masumoto in <u>United States v. Shkreli</u>, 15 CR 637; Sand, Instr. 57.  <u>See also</u> <u>Santa Fe Indus., Inc. v. Green</u>, 430 U.S. 462, 476, 97 S. Ct. 1292, 1302, 51 L. Ed. 2d 480 (1977) (manipulative under the securities laws "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity"); <u>United States v. Royer</u>, 549 F.3d 886, 899-900 (2d Cir. 2008) (upholding instructions defining fraudulent device to include orchestrated trading in securities).

15

<u>REQUEST NO. 4</u>
<u>COUNT ONE: Conspiracy to Commit Securities Fraud</u>

Count One of the Indictment charges the defendants JEFFREY CHARTIER and

LAWRENCE ISEN with conspiracy to commit securities fraud.  Specifically, Count One states,

in pertinent part:

> In or about and between August 2013 and July 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEFFREY CHARTIER and LAWRENCE ISEN, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing one or more devices, schemes and artifices to defraud; (ii) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in the Manipulated Public Companies, in connection with the purchase and sale of investments in the Manipulated Public Companies, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

> In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants JEFFREY CHARTIER and LAWRENCE ISEN, together with others, did commit and cause to be committed, among others, the following:

> <u>OVERT ACTS</u>

>     a.     On or about July 30, 2014, ISEN sent an email to Watts and an email address used by the Boiler Room (the "Boiler Room Email Address") with the subject line "I believe this will suffice," which attached a consulting agreement between Dacona Financial and Geoserve.  The text of the email read: "Let me know guys- I believe this covers all the points."

b.      On or about August 1, 2014, the Boiler Room Email Address sent an email to ISEN and Watts with the subject line "WIRING INSTRUCTIONS."  The text of the email read: "Mike, here are the wiring instructions you requested.  Have a great weekend," and listed wiring instructions to a Dacona Financial bank account.

c.      On or about October 14, 2014, Lee sent an email to CHARTIER and the Matz False Email Address with the subject line "NOBO," attaching documents entitled "NOBO List Differneces [sic]" and "NOBO List Originals," which contained lists of non-objecting beneficial owners ("NOBO") of CESX stock. The text of the email read: "Also this is all the stock that is accounted for this is how it breaks down roughly."

d.      In or about April 2015, CHARTIER sold his ownership stake in SCM to Lee.

e.      On or about August 7, 2015, ISEN sent an email to Matz that contained contact information for Gleckman.  The text of the email read: "Below is Rob's contact info.  Please prepare an invoice for $61k made out to him for PR services.  Craig tells me the total proceeds from Rob's trades yesterday was $61,130.43."

f.      On or about August 7, 2015, Matz, copying ISEN, sent an email to Gleckman attaching an invoice from PTP to Gleckman in the amount of approximately $61,000 for "PR Services."

g.      On or about September 18, 2015, ISEN sent an email to the Boiler Room Email Address with the subject line "400k contract," attaching a purported consulting agreement between PTP and Geoserve.  The text of the email read: "Here you go.  I fixed it so it reads properly."

h.      On or about October 26, 2015, ISEN sent an email to Watts and the Boiler Room Email Address with the subject line "spread sheet," attaching a spreadsheet of HECC's trading volume in October 2015.  The text of the email read: "To be discussed."

i.      On or about December 17, 2015, Watts sent an email to ISEN, copying the Boiler Room Email and others, including a Geoserve employee, Erin Hill, with the subject line "Re:ACH."  The text of the email read:

Guys
Please cut Erin some slack.
Trade happened Monday 12-14

17

> The trade settled yesterday 12-16
> The funds hit the Geo account today. 12-17
> The funds have to stay 1 day and would not be eligible to wire until tomorrow.
> The ACH is just as fast when funds are wire in and have to go out immediately.
> It should be in your account in am.  Unless there is a problem receiving an ACH

j.      On or about May 25, 2016, ISEN sent an email to the Boiler Room Email Address with the subject line "for the guys to use."  The email contained a link to an internet address with purported news about ICEIF stock.

k.      On or about June 13, 2016, ISEN sent Matz an email that read, in part: "I'm asking for a personal favor to clear up one final issue on out [sic] project. . . .  They agreed to everything you asked for, 45/55 from here, 50/50 last week, 50/50 over 2.50. . . .  I've ground them down to a rebate of $50k, and I'm asking you on a personal basis to consider this and let's move forward.  No more foggy elements."

l.      On or about July 6, 2016, CHARTIER forwarded Lee an email from a brokerage firm, Alpine Securities, regarding the steps CHARTIER would be required to take to move his accounts from Wilson-Davis to Alpine Securities.  CHARTIER's cover email read: "Oy veh!!!!!!!!!"; Lee's reply read: "Will take care of it."

I have already explained to you the crime of securities fraud.  To find that each defendant is guilty of Count One, you must find that the defendant conspired to commit securities fraud.

For Count One, the government need not prove that the defendant actually committed securities fraud, which is the unlawful act charged as the object of the conspiracy in Count One.  You must find beyond a reasonable doubt, however, that the defendant conspired with one or more individuals to commit securities fraud.

A.     Conspiracy

I will now instruct you on conspiracy.  The relevant statute for this charge is 18

U.S.C. § 371, which provides, in relevant part:

> If two or more persons conspire either to commit any offense against the
> United States, . . . and one or more of such persons do any act to effect the
> object of the conspiracy, each shall be [punished].

A conspiracy is a kind of criminal partnership, at the heart of which is an

agreement or understanding by two or more persons to violate other laws.  A conspiracy to

commit a crime is an entirely separate and different offense from the underlying crime that the

conspirators intended to commit.  Thus, if a conspiracy exists, it is still punishable as a crime,

even if it should fail to achieve its purpose.  A defendant may be found guilty of conspiracy even

if he was incapable of committing the substantive crime.  Consequently, for the defendant to be

guilty of conspiracy, there is no need for the government to prove that he, or any other

conspirator, actually succeeded in their criminal goals or even that they could have succeeded.

To prove the crime of conspiracy to commit securities fraud, the government must

prove four elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit the crime of

securities fraud, which I have previously described to you;

Second, that the defendant knowingly and intentionally became a member of the

conspiracy; and

Third, that one of the members of the conspiracy committed at least one of the

overt acts charged in the Indictment; and

Fourth, that at least one overt act was in furtherance of some object or purpose of

the conspiracy as charged in the Indictment.

19

First Element: Existence of the Agreement

The first element that the government must prove beyond a reasonable doubt for Count One is that two or more persons entered into the charged agreement to commit securities fraud.  One person cannot commit a conspiracy alone.  Rather, the proof must convince you that at least two persons joined together in a common criminal scheme.  The government need not prove that members of the conspiracy met together or entered into any express or formal agreement.  You need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or the means by which the scheme was to be accomplished.  It is sufficient to show that the conspirators tacitly came to a mutual understanding to accomplish an unlawful act by means of a joint plan or common design.

You may, of course, find that the existence of an agreement between two or more persons to violate the law has been established by direct proof.  But since, by its very nature, a conspiracy is characterized by secrecy, direct proof may not be available.  Therefore, you may infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved.  In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words.  In determining whether an agreement existed here, you may consider the actions and statements of all those you find to be participants in the conspiracy as proof that a common design existed to act together for the accomplishment of the unlawful purpose stated in the Indictment.

Second Element: Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt for Count One is that the defendant knowingly and intentionally became a member in the charged conspiracy.  I have explained to you what it means to act knowingly and intentionally.  A person

acts knowingly and intentionally if he or she acts voluntarily, deliberately, and purposefully, and not because of ignorance, mistake, accident, negligence or carelessness. In other words, did the defendant participate in the conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective? Knowledge and intent may be inferred from a secretive or irregular manner in which activities are carried out. Whether a defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

In order for a defendant to be deemed a member of a conspiracy, he need not have had a stake in the venture or its outcome. While proof of a financial or other interest in the outcome of a scheme is not essential, if you find that the defendant did have such an interest, it is a factor you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Indictment.

A defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

A defendant's knowledge may be inferred from the facts proved. In that connection, I instruct you that, to become a member of the conspiracy, a defendant need not have been apprised of all of the activities of all members of the conspiracy. Moreover, a defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. In addition, a defendant need not have joined in all of the conspiracy's unlawful objectives.  A defendant need not know the identities of all of the other conspirators, nor all of the details of the conspiracy.

In considering whether the defendant participated in a conspiracy, be advised that a conspirator's liability is not measured by the extent or duration of his participation as he need not have been a member of the conspiracy for the entire time of its existence.  In addition, each member of the conspiracy may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. Even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.  The key inquiry is simply whether the defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

I caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.  In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.

Third Element: Overt Acts

The government must prove that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Indictment, as I read them before.

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the Indictment be proven or that the overt act was committed at precisely the

time alleged in the Indictment.  It is sufficient if you are convinced beyond a reasonable doubt that the overt act occurred at or about the time and place stated.  Similarly, you need not find that the defendant himself committed the overt act.  It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all of the members of the conspiracy.

> ### Fourth Element: In Furtherance of Some Objective of the Conspiracy

If you find that an overt act or acts were committed, the government must prove beyond a reasonable doubt that the overt act or acts were done specifically to further some objective of the conspiracy.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy as charged in the Indictment.  In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  Therefore, you are instructed that the overt act does not have to be an act which, in and of itself, is criminal or constitutes an objective of the conspiracy.

In sum, in order to prove the defendant guilty of Count One, the government must prove, beyond a reasonable doubt that: (1) the defendant entered into an agreement with one or more individuals to commit securities fraud; (2) the defendant knowingly and intentionally joined the conspiracy; (3) at least one of the overt acts alleged in the Indictment was committed by at least one member of the conspiracy; and (4) the overt act was committed specifically to further some objective of the conspiracy.

If you find that the government has not proven any one of these elements as to a respective defendant, then you must find that defendant not guilty of Count One.

B.     Venue

I have explained to you the elements the government must prove beyond a reasonable doubt as to Count One.  The government also must prove venue.  As I explained to you earlier, the government must prove venue only by a preponderance of the evidence.  I remind you that to establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.

I have already explained venue for the securities fraud counts charged in Counts Three through Seven.  To establish venue for conspiracy to commit securities fraud as charged in Count One, the government must prove that it is more likely than not that an overt act in furtherance of the conspiracy was committed in the Eastern District of New York.  The overt act does not have to be an overt act that is charged in the Indictment.  In this regard, the government need not prove that the crime charged was committed in the Eastern District of New York or that the defendant or any alleged co-conspirator was even physically present here.  It is sufficient to satisfy the venue requirement if an overt act in furtherance of the conspiracy occurred within the Eastern District of New York.  This includes not just acts by the defendant or his co-conspirators, but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy.

Therefore, if you find that it is more likely than not that an overt act in furtherance of the conspiracy took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count One.  Again, I caution you that the preponderance of the

24

evidence standard applies only to venue.  The government must prove each of the elements of all

the counts beyond a reasonable doubt.

*   *   *

In sum, if you find that the government has failed to prove any one of the

elements for Count One as to JEFFREY CHARTIER or LAWRENCE ISEN, beyond a

reasonable doubt, then you must find that defendant not guilty of Count One.  To find each

respective defendant guilty of conspiring to commit securities fraud as charged in Count One,

you must find that the government has proven as to the respective defendant, beyond a

reasonable doubt, each element of the conspiracy to commit securities fraud, and that the

government has also established venue for the count by a preponderance of the evidence.

<u>Authority</u>

Adapted from the charges of the Hon. Eric N. Vitaliano in <u>United States v. Discala</u>, E.D.N.Y., 14 CR 399; Hon. Brian M. Cogan in <u>United States v. Louis F. Petrossi</u>, E.D.N.Y., 16-CR-234 (S-2); Hon. Kiyo A. Masumoto in <u>United States v. Shkreli</u>, 15 CR 637; Hon. Dora L. Irizarry in <u>United States v. Lange</u>, E.D.N.Y., 10 CR 968; Sand, Instr. 57.  <u>See also</u> <u>Santa Fe Indus., Inc. v. Green</u>, 430 U.S. 462, 476, 97 S. Ct. 1292, 1302, 51 L. Ed. 2d 480 (1977) (manipulative under the securities laws "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity"); <u>United States v. Royer</u>, 549 F.3d 886, 899-900 (2d Cir. 2008) (upholding instructions defining fraudulent device to include orchestrated trading in securities); <u>United States v. Labat</u>, 905 F.2d 18, 21 (2d Cir. 1990) ("The defendant need not know the identities of all of the other conspirators, nor all of the details of the conspiracy.").

REQUEST NO. 5
COUNT TWO: Conspiracy to Commit Wire Fraud

Count Two of the Indictment charges the defendants JEFFREY CHARTIER and

LAWRENCE ISEN with conspiracy to commit wire fraud.  That is, wire fraud is the crime

alleged to be the object or purposes of the conspiracy.  Specifically, Count Two states, in

pertinent part:

> In or about and between January 2014 and July 2017, both dates
> being approximate and inclusive, within the Eastern District of
> New York and elsewhere, the defendants JEFFREY CHARTIER
> and LAWRENCE ISEN, together with others, did knowingly and
> intentionally conspire to devise a scheme and artifice to defraud
> one or more investors and potential investors in the Manipulated
> Public Companies, and to obtain money and property from them
> by means of one or more materially false and fraudulent pretenses,
> representations and promises, and for the purpose of executing
> such scheme and artifice, to transmit and cause to be transmitted
> by means of wire communication in interstate and foreign
> commerce writings, signs, signals, pictures and sounds, contrary to
> Title 18, United States Code, Section 1343.

The relevant statute on this subject is 18 U.S.C. § 1349, which provides, in pertinent

part, that "[a]ny person who attempts or conspires to commit [mail fraud or wire] fraud shall [have

committed an offense]."

A.      Conspiracy to Commit Offenses

I have already explained what it means to conspire to commit an offense.  As a

reminder, the government need not prove that the defendant actually committed the unlawful act

charged as the object of the conspiracy in Count Two, that is, wire fraud.  Rather, the

government must prove each one of the following two elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit wire fraud;

and

26

Second, that the defendant knowingly and intentionally became a member of the conspiracy.

There were two additional overt act-related elements on which I instructed you with respect to Count One, which charges conspiracy to commit securities fraud.  These two additional overt act-related elements do not apply to Count Two, here, which charges conspiracy to commit wire fraud.

B.      Wire Fraud: Definition and Elements

I will now define wire fraud, which is alleged to be the object of the conspiracy charged in Count Two of the Superseding Indictment.

Wire Fraud

The federal wire fraud statute, Title 18, United States Code, Section 1343, provides, in pertinent part, that:

> Whoever, having devised or intending to devise any scheme or
> artifice to defraud, or for obtaining money or property by means of
> false or fraudulent pretenses, representations, or promises,
> transmits or causes to be transmitted by means of wire, radio, or
> television communication in interstate or foreign commerce, any
> writings, signs, signals, pictures or sounds for the purpose of
> executing such scheme or artifice, shall be [guilty of a crime].

The elements of wire fraud are as follows:

First, that there was a scheme or artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations or promises, as alleged in the Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

<u>Third</u>, that in the execution of that scheme, the defendant used or caused the use of interstate wires.

<u>First Element – Existence of a Scheme or Artifice to Defraud</u>

The first element of wire fraud is that there was a scheme or artifice to defraud investors or potential investors in the stocks promoted by the Boiler Room, and to obtain money or property from the investors or potential investors by means of false or fraudulent pretenses, representations or promises.

A "scheme or artifice" is simply a plan for the accomplishment of an objective. "Fraud" is a general term which embraces all the various means that an individual can devise and that are used by an individual to gain an advantage over another by false representations, suggestions, suppression or omission of the truth, or deliberate disregard for the truth.

A "scheme or artifice to defraud" for the purposes of the statute is any plan, device, or course of action designed to obtain money or property by means of false representations.  Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick, deceit, deception or swindle, or overreaching.  A statement, representation, claim, or document is false if it is untrue when made and was known at the time to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements of half-truths or the concealment or omission of material facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent representations under the statute.  The fraudulent representation must relate to a material fact or matter.  A material fact in the context of wire fraud is one that reasonably would be expected to

28

be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.

The deception need not be premised upon spoken or written words alone. The arrangement of words, or the circumstances in which they are used may convey a false and deceptive appearance. If there is intentional deception, the manner in which it is accomplished does not matter.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.

It is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.

<u>Second Element – Participation in Scheme with Intent</u>

The second element of wire fraud is that the defendant participated in the scheme to defraud knowingly, willfully and with the specific intent to defraud.

I already instructed you as to the meaning of "knowingly" and "willfully." I refer you to those instructions as they apply here also. For the purposes of the wire fraud statute, an "intent to defraud" means to act knowingly and with specific intent to deceive for the purpose of causing some financial or property loss to another.

I will remind you, however, that the question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves the defendant's state of mind. As I said before, direct proof of knowledge and fraudulent intent is not necessary. The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial

evidence, based upon a person's outward manifestations, his or her words, his or her conduct, his or her acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.  Circumstantial evidence, if believed, is of no less value than direct evidence.

Under the wire fraud statute, even false representations or statements, or omissions of material facts, do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.  A defendant, however, has no burden to establish a defense of good faith.

There is another consideration to bear in mind in deciding whether or not the defendant acted in good faith.  You are instructed that if the defendant conspired to commit wire fraud, then a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith.  No amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit for investors, will excuse fraudulent actions or false representations caused by him to obtain money or property.  I reiterate, however, that an "intent to defraud" for the purposes of the wire fraud statute means to act knowingly and with specific intent to deceive for the purpose of causing financial loss or property loss to another.  As a practical matter, then, you may find intent to defraud if the defendant knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the purpose of causing loss to another.

<u>Third Element – Use of the Wires</u>

The third and final element of wire fraud is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states, or it must pass between the United States and a foreign country. A wire communication includes a wire transfer of funds between banks in different states, telephone calls, emails and facsimiles between two different states.

The item sent through the wires need not itself contain a fraudulent representation.  However, it must further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

C.     <u>Venue</u>

I have previously instructed you on venue for a conspiracy count.  Those instructions apply here.

\*     \*     \*

In sum, if you find that the government has failed to prove any one of the elements for Count Two beyond a reasonable doubt as to JEFFREY CHARTIER or LAWRENCE ISEN, then you must find that defendant not guilty of Count Two.  To find a respective defendant guilty of conspiracy to commit wire fraud as charged in Count Two, you must find that the government has proven, beyond a reasonable doubt, each element of the conspiracy to commit wire fraud as to that defendant, and that the government has also established venue by a preponderance of the evidence.

I remind you that the government need not prove that the defendant actually committed wire fraud, the unlawful act charged as the object of the conspiracy in Count Two. Rather, what the government must prove beyond a reasonable doubt is that the purpose of the conspiracy was to commit wire fraud, and that the defendant knowingly and intentionally joined that conspiracy.

<u>Authority</u>

Adapted from the charges of the Hon. Eric N. Vitaliano in <u>United States v. Discala</u>, E.D.N.Y., 14 CR 399; Hon. Brian M. Cogan in <u>United States v. Louis F. Petrossi</u>, E.D.N.Y., 16 CR 234 (S-2); Hon. Dora L. Irizarry in <u>United States v. Lange</u>, E.D.N.Y., 10 CR 968; Hon. I. Leo Glasser in <u>United States v. Liounis</u>, E.D.N.Y., 12 CR 350; Hon. Joseph G. Bianco in <u>United States v. Abdallah</u>, E.D.N.Y., 09 CR 717 (S-1); Sand, Instr. 44-6.

REQUEST NO. 6
COUNTS NINE THROUGH FIFTEEN: Money Laundering

Counts Nine through Eleven charge the defendant JEFFREY CHARTIER with money laundering and/or aiding and abetting money laundering, and Counts Twelve through Fifteen charge the defendant LAWRENCE ISEN with money laundering and/or aiding and abetting money laundering, all in violation of Title 18, United States Code, Sections 1957 and 2. I will explain "aiding and abetting" to you later in my instructions.  The indictment reads as follows:

> In or about and between January 2014 and July 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEFFREY CHARTIER and LAWRENCE ISEN and co-conspirators Stephanie Lee and Michael Watts, together with others, did knowingly and intentionally engage in one or more monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, as set forth in the chart below, and that was derived from specified unlawful activity, to wit: fraud in the sale of securities, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, all contrary to Title 18, United States Code, Section 1957(a).

| COUNT | DEFENDANT(S) | MONETARY TRANSACTION |
|---|---|---|
| NINE | CHARTIER | On or about July 15, 2015, transferred or caused the transfer of approximately $30,000 in illicit trading proceeds from Type A Partners bank account **3407 in Florida to Dacona Financial LLC account **4146, in East Farmingdale, New York. |
| TEN | CHARTIER | On or about August 26, 2015, transferred or caused the transfer of approximately $29,000 in illicit trading proceeds from Type A Partners bank account **3407 in Florida to a bank account held in the name of Hermann Matz, **0934, in Levittown, New York. |
| ELEVEN | CHARTIER | On or about August 26, 2015, transferred or caused the transfer of approximately $15,000 in illicit trading proceeds from Type A Partners bank account **3407 in Florida to PTP bank account **4551 in East Farmingdale, New York. |

| COUNT | DEFENDANT(S) | MONETARY TRANSACTION |
|---|---|---|
| TWELVE | ISEN | On or about November 6, 2015, transferred or caused the transfer of approximately $59,500 in illicit trading proceeds from Geoserve Marketing bank account **8492 in Texas to PTP bank account **4551 in East Farmingdale, New York. |
| THIRTEEN | ISEN | On or about December 17, 2015, transferred or caused the transfer of approximately $74,000 in illicit trading proceeds from Geoserve Marketing bank account **8492 in Texas to PTP bank account **4551 in East Farmingdale, New York. |
| FOURTEEN | ISEN | On or about January 14, 2016, transferred or caused the transfer of approximately $84,664 in illicit trading proceeds from Geoserve Marketing bank account **8492 in Texas to PTP bank account **4551 in East Farmingdale, New York. |
| FIFTEEN | ISEN | On or about March 17, 2016, transferred or caused the transfer of approximately $126,000 from Marketbyte bank account **7317 in California to a bank account held in the name of Joseph Matz, **4701, in East Farmingdale, New York. |

Section 1957 of Title 18, United States Code, makes it a crime to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, also known as money laundering.  Specifically, Section 1957 provides:

> Whoever … knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity [and does so] in the United States [commits a crime].

A.      Elements of the Offense

In order to prove the crime of money laundering in violation of section 1957, the government must establish beyond a reasonable doubt each of the following elements:

First, that the defendant engaged (or attempted to engage) in a monetary transaction in or affecting interstate commerce, or that he aided and abetted others to do so.

34

Second, that the monetary transaction involved criminally derived property of a value greater than $10,000.

Third, that the property was derived from specified unlawful activity.

Fourth, that the defendant acted knowingly that is, with knowledge that the transaction involved proceeds of a criminal offense.

Fifth, that the transaction took place in the United States.

First Element—Engaging in a Monetary Transaction

The first element that the government must prove beyond a reasonable doubt is that the defendant engaged in a monetary transaction in or affecting interstate commerce, or that he aided and abetted others to do so.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

You must find that the transaction affected interstate commerce in some way, however minimal.  This effect on interstate commerce can be established in several ways.  First, any monetary transaction with a financial institution insured by the FDIC affects interstate commerce, so if you find that the financial institution involved in the transaction was insured by the FDIC, that is enough to establish that the transaction affected interstate commerce.  Second, if you find that the source of the funds used in the transaction affected interstate commerce, that

is sufficient as well.  Third, if you find that the transaction itself involved an interstate transfer of funds, that would also be sufficient.

<u>Second Element—Transaction Involved Criminally Derived Property</u>

The second element that the government must prove beyond a reasonable doubt is that the monetary transaction involved criminally derived property having a value in excess of $10,000.

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense.  The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

The government is not required to prove that all of the property involved in the transaction was criminally derived property.  However, the government must prove that more than $10,000 of the property involved was criminally derived property.

<u>Third Element—Property Derived From Specified Unlawful Activity</u>

The third element that the government must prove beyond a reasonable doubt is that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

I instruct you that this element refers to a requirement that the defendant knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a criminal offense under state or federal law. In this case, the government alleges that the funds involved in the monetary transactions were obtained through securities fraud.  I instruct you as a matter of law that securities fraud is a criminal offense under federal law.

36

<u>Fourth Element—Knowledge</u>

The fourth element that the government must prove beyond a reasonable doubt is that the defendant knowingly engaged in an unlawful monetary transaction, as defined above.

I instruct you that in a prosecution for an offense under this section, the government is not required to prove that the defendant knew the particular offense from which the criminally derived property was derived.  However, the government must prove beyond a reasonable doubt that the defendant knew that the transaction involved criminally derived property, which, I remind you, means any property constituting, or derived from, proceeds obtained from a criminal offense.

If you find that the government has established, beyond a reasonable doubt, that the defendant knew that the transaction involved property derived from a criminal offense, then this element is satisfied.

<u>Fifth Element—Transaction Took Place in the United States</u>

The fifth element that the government must prove beyond a reasonable doubt is that the transaction took place in the United States.

B.      <u>Venue</u>

I have explained to you the elements the government must prove beyond a reasonable doubt as to Counts Nine through Fifteen.  The government also must prove venue for each count.  As I explained to you earlier, the government must prove venue only by a preponderance of the evidence.  I remind you that to establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.

To establish venue for money laundering as charged in each of Counts Nine through Fifteen, the government must prove that it is more likely than not that the financial or monetary transfer which you are considering took place in or passed through the Eastern District

of New York, which I previously explained consists of the Counties of Nassau and Suffolk (Long Island), Kings (also known as Brooklyn), Queens, and Richmond (also known as Staten Island).

Therefore, if you find that it is more likely than not that that the financial or monetary transfer which you are considering took place in or passed through the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Counts Nine through Fifteen.

*   *   *

In sum, if you find that the government has failed to prove any one of the elements for Counts Nine through Eleven as to JEFFREY CHARTIER or Counts Twelve through Fifteen as to LAWRENCE ISEN beyond a reasonable doubt, then you must find that defendant not guilty of that respective Count.  To find the defendants guilty of money laundering as charged in Counts Nine through Fifteen, you must find, with respect to that particular Count and that particular defendant, that the government has proven, beyond a reasonable doubt, each element of money laundering, and that the government has also established venue by a preponderance of the evidence.

<u>Authority</u>

Adapted from Sand, Instr. 50A-25 through 31; <u>see</u> 18 U.S.C.
§§ 1957, 1956(c)(7) and 1956(c)(9).

38

REQUEST NO. 7
COUNT EIGHT: Conspiracy to Commit Money Laundering

Count Eight of the Indictment charges the defendants JEFFREY CHARTIER and

LAWRENCE ISEN with conspiracy to commit money laundering. Specifically, Count Eight

states, in pertinent part:

> In or about and between January 2014 and July 2017, both dates
> being approximate and inclusive, within the Eastern District of
> New York and elsewhere, the defendants JEFFREY CHARTIER
> and LAWRENCE ISEN and co-conspirators Stephanie Lee and
> Michael Watts, together with others, did knowingly and
> intentionally conspire to engage in monetary transactions, to wit:
> deposits, withdrawals and transfers of funds and monetary
> instruments, in and affecting interstate commerce, by, through and
> to one or more financial institutions, in criminally derived property
> that was of a value greater than $10,000 and that was derived from
> specified unlawful activity, to wit: fraud in the sale of securities,
> contrary to Title 15, United States Code, Sections 78j(b) and 78ff,
> all contrary to Title 18, United States Code, Section 1957(a).

Title 18, United States Code, Section 1956(h) makes it a crime to conspire to

engage or attempt to engage in a monetary transaction in criminally derived property of a value

greater than $10,000. The statute, in pertinent part, provides that "[a]ny person who conspires to

commit an offense defined in . . . section 1957 shall [have committed an offense]."

A.      Elements of the Offense

I have already described for you the elements of the crime of engaging in

monetary transactions in property of a value greater than $10,000 derived from specified

unlawful activity, in violation of section 1957, which is also known as money laundering.

I have already explained what it means to conspire to commit an offense. As a

reminder, the government need not prove that the defendant actually committed the unlawful acts

charged as the object of the conspiracy in Count Eight, that is, engaging in monetary transactions

in property of a value greater than $10,000 derived from specified unlawful activity, also known

39

as money laundering.  Rather, the government must prove each one of the following two elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit money laundering; and

Second, that the defendant knowingly and intentionally became a member of the conspiracy.

There were two additional overt act-related elements on which I instructed you with respect to Count One, which charges conspiracy to commit securities fraud.  These two additional overt act-related elements do not apply to Count Eight, here, which charges conspiracy to commit money laundering.

B.      Venue

I have already instructed you on venue for a conspiracy charge in connection with the instructions for Count One.  Those same instructions apply here.

*      *      *

In sum, if you find that the government has failed to prove any one of the elements for Count Eight as to JEFFREY CHARTIER or LAWRENCE ISEN, beyond a reasonable doubt, then you must find that defendant not guilty of Count Eight.  To find the defendant guilty of conspiring to commit money laundering as charged in Count Eight, you must find that the government has proven as to that defendant, beyond a reasonable doubt, each element of the conspiracy to commit money laundering, and that the government has also established venue for the count by a preponderance of the evidence.

Authority

Adapted from Sand, Instr. 74-5.

40

REQUEST NO. 8
Attempted Obstruction of Official Proceeding

Count Sixteen charges the defendant JEFFREY CHARTIER with attempted

obstruction of an official proceeding, in violation of Title 18, United States Code, Section

1512(c)(2).  Specifically, Count Sixteen states, in pertinent part:

> On or about July 12, 2017, within the Eastern District of New York
> and elsewhere, the defendant JEFFREY CHARTIER did corruptly
> attempt to obstruct, influence and impede an official proceeding, to
> wit: a federal grand jury investigation and indicted criminal case,
> United States v. Jeffrey Chartier, et al., Criminal Docket No. 17-372
> (JS), in the United States District Court for the Eastern District of
> New York.

A.      Attempt

In order to prove a defendant guilty of attempted obstruction of an official

proceeding, the government must prove each of the following elements beyond a reasonable

doubt:

First, that the defendant intended to commit the crime of obstruction of an official

proceeding; and

Second, that the defendant did some act that was a substantial step in an effort to

bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt.  In

order to convict the defendant of an attempt, you must find beyond a reasonable doubt that the

defendant intended to commit the crime charged, and that he took some action which was a

substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step

toward the commission of the crime, it is necessary to distinguish between mere preparation on

the one hand, and the actual doing of the criminal deed on the other.  Mere preparation, which

41

may consist of planning the offense, or of devising, obtaining or arranging a means for its

commission, is not an attempt, although some preparations may amount to an attempt.  The acts

of a person who intends to commit a crime will constitute an attempt when the acts themselves

clearly indicate an intent to commit the crime, and the acts are a substantial step in a course of

conduct planned to culminate in the commission of the crime.

B.       Obstruction of an Official Proceeding:  Definition and Elements

I will now define obstruction of an official proceeding.

Title 18, United States Code, Section 1512(c)(2) provides, in pertinent part, that,

"Whoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to

do so, shall be [guilty of a crime]."

The elements of obstruction of an official proceeding are as follows:

First, that the defendant obstructed, influenced, or impeded an official proceeding;

and

Second, defendant acted corruptly.

First Element – Defendant Obstructed an Official Proceeding

The first element of obstruction of an official proceeding is that the defendant

obstructed, influenced or impeded an official proceeding.  The term "official proceeding" means

a proceeding before a court, judge or federal grand jury.  Here, the official proceeding alleged is

a federal grand jury investigation and indicted criminal case, United States v. Jeffrey Chartier, et

al., Criminal Docket No. 17-372 (JS), in the United States District Court for the Eastern District

of New York (the "E.D.N.Y. Case").  You are instructed that the E.D.N.Y. case is an official

proceeding.

<u>Second Element – Defendant Acted Corruptly</u>

The second element of obstruction of an official proceeding is that the defendant acted corruptly. To act corruptly means to act with an improper purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede or influence the due administration of justice.

C.     <u>Venue</u>

As I explained to you earlier, the government must prove venue only by a preponderance of the evidence. I remind you that to establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.

Venue for attempted obstruction of an official proceeding is proper in the district in which the official proceeding was intended to be affected. As I have already stated, the official proceeding that is alleged to have been obstructed here was in the Eastern District of New York.

\*     \*     \*

In sum, if you find that the government has failed to prove any one of the elements for Count Sixteen beyond a reasonable doubt as to the defendant JEFFREY CHARTIER, then you must find him not guilty. To find the defendant guilty of attempted obstruction of an official proceeding as charged in Count Sixteen, you must find that the government has proven, beyond a reasonable doubt, each element of the crime, and that the government has also established venue by a preponderance of the evidence.

I remind you that the government need not prove that the defendant actually committed obstruction of an official proceeding. Rather, what the government must prove beyond a reasonable doubt is that defendant attempted to obstruct an official proceeding, that is,

that the defendant intended to commit the crime of obstruction of an official proceeding and did

some act that was a substantial step in an effort to bring about or accomplish the crime.

Authority

Adapted from Sand, Instr. 10-1, 10-2, 10-3; 46-69, 46-70, 46-71; the charges of the Hon. Joan Azrack in <u>United States v. Mangano</u>, 16-cr-540.

REQUEST NO. 9
Aiding and Abetting

Counts Three through Seven, which allege securities fraud, and Counts Nine through Fifteen, which allege that the defendants engaged in money laundering, also charge the defendant in each count with aiding and abetting those crimes in violation of Title 18, United States Code, Section 2.

The aiding and abetting statute, section 2(a) of Title 18 of the United States Code provides that:

> Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof.  A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of the offenses charged in Counts Three through Seven and Counts Nine through Fifteen if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person committed the crime charged.  Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  But

45

if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To establish that a defendant knowingly associated himself or herself with the crime, the government must establish that the defendant acted willfully, knowingly and with the intent to defraud.

To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting.  One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor.  An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether the respective defendant aided or abetted the commission of the crimes alleged in Count Three through Seven and Counts Nine through Fifteen, ask yourself these questions:

- Did he participate in the crime charged as something he wished to bring about?

- Did he knowingly associate himself or herself with the criminal venture?

- Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense.  If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty.

<u>Authority</u>

Adapted from Sand, Instr. 11-1, 11-2; <u>United States v. Stanchich</u>, 550 F.2d 1294 (2d Cir. 1977); the charges of the Hon. Eric N. Vitaliano in <u>United States v. Kershner</u>, 13 CR 452; <u>see</u> <u>also</u> <u>United States v. Labat</u>, 905 F.2d 18, 23 (2d Cir. 1990) (discussing requirements of aiding and abetting liability); <u>United States v. Clemente</u>, 640 F.2d 1069 (2d Cir. 1981) (same), <u>cert.</u> <u>denied</u>, 454 U.S. 820 (1981).

REQUEST NO. 10
Testimony of Cooperating Witnesses

You have heard from witnesses who testified that they were actually involved in planning and carrying out the crimes charged in the Indictment.  Indeed, it is the law in federal courts that the testimony of an accomplice may be enough in itself for conviction, if the jury finds that the testimony is credible and establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.  I have given you some general considerations on credibility and I will not repeat them all here.  Nor will I repeat all of the arguments made on both sides.  However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

You should ask yourselves whether any of these so-called accomplices would benefit more by lying, or by telling the truth.  Was the testimony of any of them made up in any way because he or she believed or hoped that he or she would somehow receive favorable treatment by testifying falsely?  Or did any of them believe that his or her interests would be best served by testifying truthfully?  If you believe that any of the witnesses was motivated by hopes of personal gain, was the motivation one which would cause him or her to lie, or was it one which would cause him or her to tell the truth?  Did this motivation color his or her testimony?  In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to each of the cooperating accomplice witnesses.

Finally, the cooperating witnesses have pled guilty to charges arising out of the same facts as this case.  You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that a prosecution witness pled

guilty to similar charges.  That witness's decision to plead guilty was a personal decision about his or her own guilt.  The fact that they pleaded guilty may not be used by you in any way as evidence against or unfavorable to the defendants on trial here.

<u>Authority</u>

Adapted from Sand, Instr. 7-5; the charges of the Hon. Eric N. Vitaliano, <u>United States v. Discala</u>, E.D.N.Y., 14 CR 399; Hon. Brian M. Cogan in <u>United States v. Louis F. Petrossi</u>, E.D.N.Y., 16 CR 234 (S-2).

REQUEST NO. 11
Similar Acts Evidence
(If Applicable)

During this trial, you have heard evidence that, on other occasions, the defendants JEFFREY CHARTIER and/or LAWRENCE ISEN engaged in conduct that was similar in nature to the conduct charged in the Indictment.  Evidence of prior similar acts was admitted as background evidence to show the development of relationships of trust between the defendants and the government's witnesses and to provide background evidence of the charged crimes.  In addition, if you determine that either of the defendants committed the acts charged in the Indictment and the similar acts as well, then you may, but need not, draw an inference that, in doing the acts charged in the Indictment, that defendant acted knowingly and intentionally and not because of some mistake, accident, carelessness, or other innocent reasons.

However, the defendants are on trial only for committing the acts alleged in the Indictment.  You may not consider evidence of any similar acts as a substitute for proof that the defendants committed the crimes charged in this case.  Nor may you consider this evidence as proof that the defendants have a criminal propensity or bad character.  The evidence of other similar acts was admitted for limited purposes and you may consider it only for those limited purposes.

Authority

Adapted from the charge of the Hon. Eric N. Vitaliano in United States v. Discala, E.D.N.Y., 14 CR 399; Hon. Dora L. Irizarry in United States v. Lange, E.D.N.Y., 10 CR 968; Sand, Instr. 3-4.

REQUEST NO. 12
Character Evidence
(If Applicable)

The defendant(s) JEFFREY CHARTIER and/or LAWRENCE ISEN called as a witness [Name], who gave his/her opinion of the defendant's good character.  This testimony is not to be taken by you as the witness's opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine.  You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence, including testimony about a defendant's good character, you find a reasonable doubt has been created, you must acquit him of all the charges.

On the other hand if, after considering all the evidence, including that of a defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you must not acquit him merely because you believe him to be a person of good character.

Authority

Adapted from the charge of the Hon. Dora L. Irizarry in United States v. Lange, E.D.N.Y., 10 CR 968.

51

<u>REQUEST NO. 13</u>
<u>Uncharged Persons</u>

You may not draw any inference, favorable or unfavorable, toward the government or the defendants on trial from the fact that certain persons were not named as defendants in this Indictment.  You should draw no inference from the fact that any other person is not present at this trial.  Your concern is solely the defendants on trial before you.

That other individuals are not on trial before you is not a matter of concern to you.  You should not speculate as to the reasons these individuals are not on trial before you.  The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendants who are on trial.

<u>Authority</u>

Adapted from Sand, Instr. 3-4.

REQUEST NO. 14
Testimony of Defendant (if applicable)

The defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.  In this case, JEFFREY CHARTIER and/or LAWRENCE ISEN did testify and he was subject to cross examination like any other witness.  You should examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case.

Authority

United States v. Brutus, Cr. No. 06-2710, 2007 WL 2828690, n.7
(2d Cir. Oct. 2, 2007), adapting charging language from United
States v. Gaines, 457 F.3d 238, 249 n.9 (2d Cir. 2006).

53

<u>REQUEST NO. 15</u>
<u>Defendant's Right Not to Testify (if applicable)</u>

The defendants JEFFREY CHARTIER and/or LAWRENCE ISEN did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

<u>Authority</u>

Adapted from Sand, Instr. No. 5-21.

REQUEST NO. 16
Uncalled Witnesses Equally Available
(If applicable, based on arguments of counsel)

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

However, you also should remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof to prove the charges beyond a reasonable doubt remains with the government at all times.

Authority

Adapted from the charge of the Hon. Dora L. Irizarry in United States v. Lange, E.D.N.Y., 10 CR 968.

<u>REQUEST NO. 17</u>
<u>All Available Evidence Need Not Be Produced</u>

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned during the course of the trial.

<u>Authority</u>

Adapted from E. Devitt & C. Blackmar, <u>Federal Jury Practice and Instructions</u>, § 72.11 (3d ed. 1977).

REQUEST NO. 18
Interviewed Witnesses
(If Applicable)

During the course of the trial you heard testimony that the attorneys for the government [and defense] interviewed witnesses when preparing for and during the trial.  You must not draw any unfavorable inference from that fact.  On the contrary, attorneys have an obligation to prepare their case as thoroughly as possible and in the discharge of that responsibility properly interview witnesses in preparation for the trial and from time to time as may be required during the course of the trial.

Authority

Adapted from the charge of Hon. I. Leo Glasser in United States v. Young Taek Lee, E.D.N.Y., 93 CR 1072.

REQUEST NO. 19
Prior Inconsistent Statements
(If Applicable)

You have heard evidence that witnesses made statements on earlier occasions that counsel argues are inconsistent with the witnesses' trial testimony.  Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on a defendant's guilt or innocence.  Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness or witnesses who may have contradicted themselves.  If you find that the witness made an earlier inconsistent statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether the explanation appealed to your common sense.  It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight is to be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

Authority

Adapted from the charge of the Hon. Carol B. Amon in United States v. Wapnik, E.D.N.Y., 92 CR 419.

REQUEST NO. 20
Summary Evidence

Some exhibits were admitted into evidence in the form of charts and summaries.

Those charts and summaries were admitted in order to save the time of reviewing voluminous

records and to avoid inconvenience.  It is the jury's responsibility to determine whether the

charts and summaries accurately reflect the evidence presented.  You should consider these

charts and summaries the same way you would any other evidence.

Authority

Adapted from the charge of the Hon. Brian M. Cogan in United
States v. Nadeem, E.D.N.Y., 13 CR 424; United States v. Pinto,
850 F.2d 927, 935 (2d Cir. 1988).

## CONCLUSION

The government respectfully requests that the Court include the foregoing in its

instructions to the jury.  The government also requests the opportunity to submit further

instructions or amend those submitted, as may become appropriate during the course of the trial.

Dated:      Central Islip, New York
            February 12, 2020

                              Respectfully submitted,

                              RICHARD P. DONOGHUE
                              United States Attorney
                              Eastern District of New York


                    By:      _____/s/_____
                              Whitman G.S. Knapp
                              Kaitlin T. Farrell
                              Assistant United States Attorneys
                              (718) 254-6107/6072